UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| T. R.,<br><br>        Plaintiff,<br><br>    v.<br><br>HUMBOLDT COUNTY OFFICE OF EDUCATION, *et al*.,<br><br>        Defendants. | Case No. 14-cv-04839-NJV<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 28 & 36 |

## I.  INTRODUCTION

On February 6, 2015, Plaintiff filed an Amended Complaint.  (Doc. 20).  On March 20, 2015, Defendants Eagles, Fattig, Humboldt County Board of Education ("HCOE Board"), Humboldt County Office of Education ("HCOE"), and Humboldt County SELPA (collectively "School Defendants") filed a Motion to Dismiss (Doc. 28), to which Plaintiff filed a Response (Doc. 32).  On April 28, 2015, Defendants Humboldt County Child Welfare, Juvenile Probation Services, and Semper Virens Psychiatric Health Facility (collectively "County Defendants") filed an Answer to the Amended Complaint (Doc. 33) and are not a part of the pending Motion.  On May 12, 2015, School Defendants filed a Reply (Doc. 34), and this court took the pending Motion to Dismiss under submission (Doc. 36).  Plaintiff responded by filing a Motion to Strike the Reply as untimely filed. (Doc. 36).  For the reasons that follow, the court DENIES the Motion to Dismiss and the Motion to Strike.

## II. CLAIMS

Plaintiff's amended complaint alleges three claims for relief, as follows:

### A. 42 U.S.C. §1983

Plaintiff alleges that Garry Eagles and Mindy Fattig, in their individual capacities, and County defendants, violated § 1983 by depriving plaintiff of his rights under the Fourteenth Amendment during his nine months of detention at Humboldt Juvenile Hall by denying him of "any appropriate mental health services or adequate means to communicate." Amend. Comp. (Doc. 20) at ¶72. This claim further alleges that Eagles and Fattig were "deliberately indifferent to T.R.'s rights as a special education student" and failed to "consider all placement options" pursuant to "state and federal law." *Id*. Plaintiff seeks compensatory and punitive damages against Director Eagles and Ms. Fattig for the alleged violations of §1983.

### B. Section 504 of the Rehabilitation Act

Plaintiff alleges that HCOE, the HCOE Board, SELPA, and County Defendants violated Section 504 of the Rehabilitation Act by discriminating against Plaintiff based on his disability during his detention at Juvenile Hall. The alleged discrimination took the form of "failing to offer him appropriate mental health services while incarcerated in the hall" and by "failing to provide [him] an appropriate placement." *Id*. at ¶81. This claim further alleges that "T.R. was placed and held in Juvenile Hall solely because of [his] disability." *Id*. at ¶82. Plaintiff seeks compensatory damages for the alleged violation.

### C. Americans With Disabilities Act

Plaintiff alleges that HCOE, the HCOE Board, SELPA, and County Defendants violated Title II of the ADA by "failing in their responsibilities under Title II to provide services, programs and activities in a full and equal manner to T.R. as described above," including but not limited to "failing to provide T.R. with appropriate mental health services." *Id*. at ¶90. Plaintiff seeks "special and general damages" for the alleged violations of the ADA.

### III. LEGAL STANDARD

School Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff has failed to state a claim upon which relief can be granted. In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). "For purposes of a motion to dismiss, we accept all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012). Thus, in order to survive a motion to dismiss, the nonmoving party must allege facts that are "enough to raise a right to above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds. '[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *In re Gilead Sciences Secs. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (citation omitted) (quoting *Twombly*, 550 U.S. at 557).

### IV. FACTUAL ALLEGATIONS[1]

Plaintiff is a minor student "with a disability and is entitled to legal rights and remedies set forth in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et.seq. and is an individual with exceptional needs within the meaning of that term under California Education Code §56026." Amend. Comp. (Doc. 20) at ¶4.

---

[1] Defendants included a "factual allegations" section within the Motion to Dismiss, which adequately summarizes the facts contained within the Amended Complaint and which the court adopts in large part here.

Defendant HCOE is a public school district under the laws of the State of California and was the local education agency responsible for providing juvenile delinquent youth who reside in the Humboldt Juvenile Hall full and equal access to the public education programs in compliance with the requirements of state and federal law. *Id*. at ¶7.

Defendant Humboldt County Board of Education is the governing board of HCOE, defendant Garry Eagles is the Superintendent of HCOE, and defendant Mindy Fattig is the "Special Education Local Plan ["SELPA"] Director of HCOE." *Id*. at ¶8, 12, & 13. Defendant SELPA is a "public education agency comprised of all of the local education agencies in Humboldt County," and is "responsible for administering the allocations of special education funding throughout Humboldt County," and "for coordinating the implementation of special education placement and services for all special needs students within Humboldt County." *Id*. at ¶8.

In July of 2012, Plaintiff was adjudicated as a dependent child of the Juvenile Court pursuant to Welfare and Institution Code §300. *Id*. at ¶22. "This happened because T.R.'s behavior was beyond the control of his grandparents and school officials." *Id*. Plaintiff "acted paranoid at home and engaged in violent behavior." *Id*. He "made little progress at school . . . ignored all rules . . . spent considerable time living in the homeless community [and] believed the homeless community was his family." *Id*.

In May of 2012, the Juvenile Court, "at the direction of the Humboldt County Child Welfare," placed T.R. in a group home in San Diego, California, which "specialized in treatment for deaf students with social and emotional needs." *Id*. at ¶¶23, 24  During his time at the group home, Plaintiff displayed "physically assaultive behavior, including self-harm, property destruction, atypical conduct (urinating all over the facility), defiant behaviors and elopement." *Id*. at ¶24. During periods of his elopement, Plaintiff would "live on the streets and exchange sexual acts for drugs." *Id*.

In September of 2012, Plaintiff returned to Humboldt County and was placed by Child Welfare Services in a number of unsuccessful placements. *Id.* at ¶25. Child Welfare Services was unable to place him in a locked facility because no such facility exists in California. *Id.* Upon his return to Humboldt County, Plaintiff "acted paranoid and would express delusional thoughts." *Id.* at ¶26. He spent much of his time with the homeless community, carried out "illegal tasks" at the direction of homeless adults, "engaged in substance abuse," and "exchanged sex for drugs." *Id.*

Plaintiff alleges, on information and belief that "Defendants" were "aware" of his "dangerous and self-injuries activity" and failed to "supervise and protect" him "from harming himself and others." *Id.* at ¶27. In November of 2012, shortly after being discharged from an unsuccessful placement, Plaintiff was apprehended for public intoxication and was placed in the Humboldt Juvenile Hall. *Id.* at ¶30. Defendant HCOE is responsible for providing "special education services, including related mental health services to minors at Juvenile Hall," pursuant to the California Education Code, and was responsible for providing these services to plaintiff during his detention there. *Id.*

Plaintiff alleges that throughout his nine-month incarceration at Juvenile Hall "HCOE, Probation, or County Mental Health failed to provide him with appropriate mental health services," that he was wrongfully denied a "locked residential facility," and that School Defendants Fattig and Eagles "failed to take any action to ensure that [his] special education needs were met." *Id.* at ¶32, 34, 36, & 37.

Plaintiff further alleges that he was wrongfully denied access to the services of an American Sign Language ("ASL") interpreter during non-school hours in Juvenile Hall, as well as appropriate "psychiatric services." *Id.* at ¶45, 47. While he was in Juvenile Hall, a psychologist retained by Child Welfare Services, at the direction of the Juvenile Court, opined that Plaintiff should be placed in a locked residential facility located in Florida, which specialized in providing "therapeutic" services to deaf children. *Id.* at ¶40.

5

Plaintiff was discharged from Juvenile Hall on July 3, 2013, "after his public defender brought to the [Juvenile] Court's attention that they [sic] had no reason to continue to hold him," and further alleges that his "approximately nine-month stay at the hall far exceeded any punishment warranted for public intoxication." *Id*. at ¶50. The complaint alleges that "[c]ollectively, Defendants caused T.R. to be incarcerated for almost nine months because of his disabilities." *Id*. at ¶51. Upon his release from Juvenile Hall plaintiff was "quickly removed from his grandparent's home because he became violent." *Id*. at ¶54.

On July 30, 2013, Plaintiff's grandparents initiated an administrative due process proceeding with the Office of Administrative Hearings ("OAH") on behalf of themselves and T.R. pursuant to the IDEA and state law, entitled Parent v. Humboldt County Office of Education and Northern Humboldt Union High School. *Id*. at ¶55. During the pendency of the OAH proceedings, Plaintiff briefly attended, and then stopped attending McKinleyville High School, which is within the Northern Humboldt School District. *Id*. at ¶56. He was then placed in a "high security group home" located in Humboldt County in September 2013, where he "remained for four hours prior to eloping back into the streets." *Id*. at ¶56, 57. The director of the group home "was not able to get T.R. to school because of T.R.'s significant mental health and behavioral issues." *Id*. at ¶57.

On December 24, 2013, after the OAH hearings had concluded, the Administrative Law Judge issued a written decision, which included an Order for relief. The ALJ determined that HCOE had denied Plaintiff a Free Appropriate Public Education ("FAPE") during his detention in the Juvenile Hall, and ordered HCOE to provide Plaintiff "with extensive compensatory education services, including residential treatment." *Id*. at ¶64.

## V.   DISCUSSION

### A.   *The § 1983 Claims against Eagles & Fattig*

Defendants assert that "Plaintiff's § 1983 claim is simply a disguised claim for alleged

6

violations of [P]laintiff's rights arising under the IDEA, [Section 504 of] the Rehabilitation Act, and [the] ADA, all of which preclude private causes of actions for damages to be made against individual (i.e. nonentity) defendants." Mot. (Doc. 28) at 18. Plaintiff counters that his § 1983 claims are premised on violations of the Fourteenth Amendment, not the IDEA and that he has alleged sufficient facts to support separate causes of actions under Section 504 of the Rehabilitation Act, and the ADA.

While a federal statute such as IDEA can create a right enforceable through § 1983, *see Blessing v. Freestone,* 520 U.S. 329, 340-41 (1997), such an action is not cognizable where congress has either expressly or impliedly created "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 n. 4 (2002) (quoting *Blessing,* 520 U.S. at 341.). "Section 1983 is not an available remedy for violations of the IDEA, Title II of the ADA, or Section 504 of the Rehabilitation Act. The comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA." *A.A. v. Clovis Unified Sch. Dist*., 2014 WL 3488963, at *5 (E.D. Cal. July 14, 2014) (citing *Blanchard v. Morton Sch. Dist*., 509 F.3d 934, 938 (9th Cir. 2007)). Indeed, "[t]he Ninth Circuit has ruled that, because Congress provided a comprehensive remedial scheme for individual suits under both Title II and the Rehabilitation Act, it intended to preclude suits seeking to enforce Title II rights through § 1983." *Chadam v. Palo Alto Unified Sch. Dist*, 2014 WL 325323, *2 (N.D. Cal. Jan. 29, 2014) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002)).

However, the claim contained in the Amended Complaint asserts that Eagles and Fattig's actions violated the Fourteenth Amendment, and resulted in Plaintiff being improperly incarcerated for nine months, which deprived him of appropriate mental health services and led to "phsychological harm, mental distress, and fear." Amend. Compl. (Doc. 20) at 14. The Amended Complaint alleges that; Eagles and Fattig were aware of Plaintiff's "dangerous and self-injurious

7

activities" and failed to take action to ensure that Plaintiff's special education needs were met; that Fattig misrepresented HCOE's legal responsibilities; and that the actions of both Defendants led to continued incarceration which resulted in continued mental deterioration.  The court does not find that the claims brought against Eagles and Fattig are predicated on violations of the IDEA, Title II of the ADA, or Section 504 of the Rehabilitation Act, but rather, as expressly stated, on the Fourteenth Amendment.  This is not unlike *Clovis Unified Sch. Dist.*, a case quoted by and heavily relied on by Defendants in their Motion, wherein the court found that "this cause of action is dismissed to the extent that the Section 1983 claims are based on violations of the ADA, Section 504 of the Rehabilitation Act, and the IDEA.  *This claim remains as to violations of the Fourteenth Amendment*."  *A.A. v. Clovis Unified Sch. Dist.*, 2014 WL 3488963, *6 (E.D. Cal. July 14, 2014) (emphasis added).  "[T]he IDEA and its requirement are not intended to 'shield school officials from all liability for conduct that violates constitutional and statutory rights that exist *independent* of the IDEA and entitles a plaintiff to relief *different* from what is available under the IDEA.'"  *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1167, 1182 (E.D. Cal. 2014) (quoting *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011) (rev' on other grounds)).

Defendants also assert that Plaintiff is unable to state a claim against Eagles and Fattig under § 1983, because the denial of educationally-related services during confinement does not constitute "cruel and unusual punishment" under the Eighth Amendment.  Defendants preface this argument by asserting that while challenges made by "pre-trial detainees" are properly brought under the Fourteenth Amendment, "in cases alleging unconstitutional conditions of confinement, the Eighth Amendment standard applies to both pretrial detainees and convicted prisoners.  *Clouthier v. County of Contra Costa,* 591 F.3d 1232, 1243–44 (9th Cir. 2010)."  Mot. (Doc. 28) at 14.  Defendants move for dismissal of this claim, arguing that Plaintiff is unable to show "denial of educationally-related services constitutes 'cruel and unusual punishment' under the Eighth

8

Amendment." *Id*. at 19. Plaintiff counters that the Eighth Amendment standard does not apply to juvenile detainees who have not been convicted and that even if the court were to apply such a standard Plaintiff has asserted facts sufficient to meet the Eighth Amendment deliberate indifference test. *See* Resp. (Doc. 32) at 8-11.

The court finds that Defendants have failed to establish that Plaintiff was in custody, or subject to confinement such that an Eighth Amendment analysis is possible. The cases relied upon by Defendants either relate to pre-trial detainee adults awaiting *criminal* prosecution, or to juveniles following conviction.[2] In the present case, Plaintiff was "adjudicated a dependent child of the Juvenile Court pursuant to the Welfare and Institutions Code section 300." Amend. Comp. (Doc. 20) at 5. "Nothing in the state welfare laws at issue in the child custody proceedings or the manner in which the state conducts these proceedings indicates that the laws are by nature criminal." *Doe v. Mann*, 285 F. Supp. 2d 1229, 1236 (N.D. Cal. 2003) *aff'd*, 415 F.3d 1038 (9th Cir. 2005) (discussing the status of a juvenile over whom the state had exerted jurisdiction under Welfare and Institutions Code section 300). Accordingly, the Due Process clause of the

---

[2] For example, Defendants point this court to *Herrera v. Cnty. of Los Angeles*, 2010 WL5313314 (C.D. Cal. 2010), *aff'd in part, rev'd in part and remanded,* 482 F. App'x 263 (9th Cir. 2012), for the proposition that "the District Court adopted the Eighth Amendment 'deliberate indifference to serious medical needs' standard involving a detained juvenile." Mot. (Doc. 28) at 15. However, a closer look reveals that the district court's decision in *Herrera* was based on the distinction that the juvenile had had been criminally convicted. Specifically, the court stated that:

> Moreover, unlike in cases where the Fourteenth Amendment standard was applied, *see, e.g., Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir.1987) (analyzing the constitutional claims of wards incarcerated at a Oregon juvenile facility under the Fourteenth Amendment where wards had not been convicted of a crime and their confinement was solely for noncriminal and non-penal purposes), Plaintiff was confined to the detention center *following a judicial determination that he broke the law*.

*Id*. at *3 (emphasis added). Thus, *Herrera* is instructive in as much as it informs this court that the proper course is to follow *Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir.1987) which, "analyz[ed] the constitutional claims of wards incarcerated at a Oregon juvenile facility under the Fourteenth Amendment where wards had not been convicted of a crime and their confinement was solely for noncriminal and non-penal purposes." *Id*.

Fourteenth Amendment governs Plaintiff's claim and the request to dismiss this claim is denied. *See Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir. 1987) (Due Process standard applied to conditions at an Oregon juvenile detention facility where the juvenile justice system was noncriminal and nonpenal in nature); *cf. R.G. v. Koller*, 415 F. Supp. 2d 1129, 1152 (D. Haw. 2006) (applying Due Process standard to juveniles confined by Hawaii Family Courts where wards were adjudicated delinquent and not convicted of a crime.).

### B.     The Rehabilitation & ADA Claims

Defendants claim that "Plaintiff fails to allege sufficient facts to support a plausible claim for violation of the Rehabilitation Act" and the ADA.  Mot.  (Doc. 23) at 20, 23.  Defendants focus on Plaintiff's allegations against Defendants of failing to offer appropriate mental health services while Plaintiff was in Juvenile Hall and of failing to provide Plaintiff an appropriate placement.  Defendants appear to argue that these allegations amount to a claim of an incorrect evaluation and to sustain a challenge under Section 504 of the Rehabilitation Act requires "'something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist.' *T.B. v. San Diego Unified School Dist*., 2012 WL 1611021 (S.D. Cal. 2012)." *Id*. at 22.

In response, Plaintiff points to facts in the Amended Complaint which allege intentional discrimination and a deliberate indifference to Plaintiff's needs as follows:

> The Amended Complaint alleged that in November of 2012, T.R. was placed in the Humboldt Juvenile Hall and became the responsibility of the HCOE. Amended Complaint at 6, ¶ 29-31. The HCOE *was aware* of T.R.'s previous identified needs specific to his mental health issues. Amended Complaint at 8, ¶ 33-34. While placed in the juvenile hall, Dr. Stika, a nationally recognized expert for deaf students, provided a comprehensive report recommending that T.R. receive intensive psychiatrically focused interventions and placement in a locked residential facility. Amended Complaint at 9, ¶ 40. This was not the first, but the second time such information had been provided to the defendants. Dr. Stika opined that these mental health services were necessary if any improvement were to be made. *Id.*
>
> This was not simply a disagreement as to what services T.R. required, as alleged by

United States District Court
Northern District of California

> the School Defendants. On the contrary, as asserted in the Amended Complaint, the School Defendants failed to "consider alternative placements for T.R" other than juvenile hall and completely shirked their legal responsibility to offer him any educational placement. Amended Complaint at 15, ¶ 81. Defendant FATTIG attended T.R.'s juvenile hearings and misrepresented the legal obligation of School Defendants to offer any school placement for T.R. *Id.* at 8, ¶ 35. FATTIG specifically represented that the HCOE could only offer school placement options when T.R. was released from juvenile hall. *Id.* at 10, ¶ 48.

Resp. (Doc. 32) at 14. Taking the allegations contained in the Amended Complaint as true, the court finds that Plaintiff has alleged sufficient facts to plead intentional discrimination, or at least deliberate indifference, to support his claims under the Rehabilitation Act and the ADA. *See Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008) ("[W]e have held that plaintiffs must prove a *mens rea* of 'intentional discrimination,' to prevail on a § 504 claim, but that that standard may be met by showing 'deliberate indifference,' and not only by showing "discriminatory animus.").

Defendants also argue that they "cannot be liable as a matter of law for failing to make appropriate decisions with respect to T.R.'s special education needs because, while he was incarcerated at Juvenile Hall, the Juvenile Court had exclusive jurisdiction over all decisions with respect T.R.'s custody." Mot. (Doc. 28) at 22. Plaintiff counters that School Defendants caused his "extensive Juvenile Hall placement" and asserts that "[i]n California, a county office of education (such as the HCOE) is responsible to provide a Free Appropriate Public Education ("FAPE") under the IDEA to children who are confined in juvenile hall. Ed. Code § 48645.1, 48645.2, 56150." Resp. (Doc. 32) at 15.

Indeed, "[i]n California, a county office of education is responsible for the provision of a FAPE to individuals who are confined in juvenile hall schools within that county during the pendency of their detention." *Los Angeles Cnty. Office of Educ. v. C.M.*, 2011 WL 1584314, at *3 (C.D. Cal. Apr. 22, 2011). Accordingly, Defendants' requests to dismiss Plaintiff's claims pursuant to the Rehabilitation Act and the ADA are denied.

### C. The Claims Against SELPA

Finally, Defendants assert that "Plaintiff's amended complaint erroneously names the "Humboldt County Special Education Local Area Plan" ("SELPA") as a separate entity subject to suit for the alleged violations of the Rehabilitation Act and the ADA." Mot. (Doc. 28) at 24. Moreover, Defendants assert that "[l]iability under the IDEA, ADA, and the Rehabilitation Act is premised upon receipt of federal funds, and that HCOE is the direct recipient of federal funds for the Humboldt-Del Norte Multi-District SELPA." *Id*. at 24-25.

Plaintiff has alleged that SELPA is responsible for administering the allocation of special funding throughout Humboldt County. "SELPA and other school district 'SELPAs' have been maintained as defendants apart from their school district in the District Court." *A.A. v. Clovis Unified Sch. Dist.*, 2014 WL 3488963, at *3 (E.D. Cal. July 14, 2014) (citing *R.G. v. Clovis Unified Sch. Dist.,* 2011 WL 1103182 (E.D. Cal. Mar. 22, 2011) and *Z.F. v. Ripon Unified Sch. Dist.,* 2011 WL 4056084 (E.D. Cal. Sept. 9, 2011));  *see also*, *S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155 (9th Cir. 2014);  *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025 (9th Cir. 2006).

Moreover, Plaintiff's Amended Complaint alleges that SELPA receives federal funding.

> On this motion to dismiss, Plaintiff['s] allegations are taken as true. Defendants' affidavits submitted under penalty of perjury do not change the legal standard at this stage of the pleadings.  Plaintiff has alleged that SELPA ensures compliance with federal regulations by taking specific actions, and receives federal funds . . . . Defendants contend that SELPA is not an entity separate from [HCOE], but is an "arm" of the same, and does not receive federal funding directly, but through [HCOE] . . . On a Rule 12(b)(6) motion, Defendants' affidavits are given no weight.

*A.A. v. Clovis Unified Sch. Dist*., 2014 WL 3488963, at *3 (E.D. Cal. July 14, 2014).  "The Court construes the facts in the light most favorable to Plaintiff, and SELPA will not be dismissed at this stage." *Id*.

12

### D. *The Motion to Strike*

Plaintiff filed a Motion to Strike Defendants' Reply brief as untimely. (Doc. 36). Defendants admit that the Reply was untimely, due to a calendaring mistake, and assert that Plaintiff suffered no prejudice by its untimely filing. *See* Resp. to Mot. to Strike (Doc. 37).

While the normal course for the court would be to strike a reply as untimely filed,[3] the court takes the admission of mistake by counsel in good faith and agrees that Plaintiff suffered no prejudice as the court considered the Reply when denying the Motion to Dismiss.

## VI. CONCLUSION

Accordingly, and for the reasons stated above, the Motion to Dismiss (Doc. 28) and the Motion to Strike are DENIED.

**IT IS SO ORDERED**.

Dated: July 8, 2015

_____
NANDOR J. VADAS
United States Magistrate Judge

---

[3] The court would note that while the Order taking the motion under submission (Doc. 35) posted on the docket after the Reply was filed, the Order was drafted prior to the court seeing the Reply and the timing was a reflection of the process of having documents electronically uploaded to the docket, rather than a tacit acceptance of the untimely Reply.